

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-1996

# PA Nurses Assoc v. PA State Ed Assoc

Precedential or Non-Precedential:

Docket 95-7457,95-7458,95-7645

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"PA Nurses Assoc v. PA State Ed Assoc" (1996). *1996 Decisions.* Paper 115.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/115

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 95-7457


PENNSYLVANIA NURSES ASSOCIATION,
                                        Appellant
                    v.

PENNSYLVANIA STATE EDUCATION ASSOCIATION;
   DEBRA FERGUSON; RICHARD LEWIS; JEFFREY LEWIS;
KAREN SCHRADER; ALFRED NELSON, JR.; THOMAS FERGUSON


No. 95-7458


PENNSYLVANIA NURSES ASSOCIATION

                    v.

PENNSYLVANIA STATE EDUCATION ASSOCIATION;
   DEBRA FERGUSON; RICHARD LEWIS; JEFFREY LEWIS;
KAREN SCHRADER; ALFRED NELSON, JR.; THOMAS FERGUSON,
                                        Appellants


No. 95-7645


PENNSYLVANIA STATE EDUCATION ASSOCIATION;
   DEBRA FERGUSON; RICHARD LEWIS; JEFFREY LEWIS;
KAREN SCHRADER; ALFRED NELSON, JR.; THOMAS FERGUSON,
                                        Petitioners

                    v.

PENNSYLVANIA NURSES ASSOCIATION,
                                        Respondent

HONORABLE WILLIAM W. CALDWELL,
                                        Nominal Respondent

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 94-cv-00880)


Argued May 20, 1996

Before: SLOVITER, Chief Judge,
                    SAROKIN
and ROSENN, Circuit Judges

(Opinion Filed July 25, l996)

Thomas A. French   (Argued)
David F. O'Leary
Rhoads & Sinon
Harrisburg, PA   17108-1146

Barbara J. Sapin
American Nurses Association
Washington, DC   20024

        Attorneys for Appellant in No. 95-7457,
                and Appellee in No. 95-7458

Robert H. Chanin   (Argued)
National Educational Association
Washington, DC   20036

Jonathan Walters
Markowitz & Richman
Philadelphia, PA   19107

        Attorneys for Appellees in No. 95-7457,
                Appellants in No. 95-7458,
            and Petitioners in No. 95-7645

Todd J. Shill
Rhoads & Sinon
Harrisburg, PA   17108-1146

        Attorney for Respondent in No. 95-7645

                    OPINION OF THE COURT


SLOVITER, Chief Judge.

The contesting parties in this case are two labor organizations who vied for the right to represent the nurses at eight health-care facilities in Pennsylvania and Delaware. Pennsylvania Nurses Association (PNA), the organization that had previously been the bargaining agent, filed an action asserting eleven state-law tort claims against the Pennsylvania State Education Association and six individuals associated with it, four of whom had previously been PNA's representatives (collectively referred to as "PSEA"). The district court entered judgment on the pleadings for PSEA on nine of the claims on the ground that they were preempted by the National Labor Relations Act. It rejected PSEA's contention of preemption on the remaining claims and remanded them to the state court. PNA appeals the district court order to the extent that it entered judgment for PSEA. PSEA, as cross-appellant, appeals from the disposition of the two surviving claims.

## I.
## PROCEDURAL HISTORY

Because this appeal arises from the district court's grant of a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), we accept as true the well-pleaded allegations in the complaint and draw all inferences therefrom in favor of PNA. United States v. City of Philadelphia, 644 F.2d 187, 190 (3d Cir. 1980). Accordingly, we set forth the facts as PNA alleges them.

PNA is both a professional association of nurses and a nurses' labor union; PSEA is a school employees' labor union. Before June 30, 1993, PNA represented approximately 9,000 nurses through sixty local bargaining units in Pennsylvania and Delaware. During that period, defendants Debra Ferguson, Richard Lewis, Jeffrey Lewis, and Karen Schrader worked for PNA as labor representatives. Sometime thereafter, these representatives decided that they no longer wanted to work for PNA and would be more likely to secure positions with another union if they could bring along with them the local PNA units they represented. Debra Ferguson, in particular, sought a position with PSEA, offering to bring with her as many of PNA's local units as possible. She accordingly developed a plan to work with PSEA to enlist the help of the other defendant PNA representatives in shifting PNA local units and their leadership away from PNA and toward PSEA.

PNA claims that to further the conspiracy that it alleges, PSEA sought authorization from its Board of Directors to allow it to represent nurses as well as teachers; met with the executive and negotiating committees of various PNA local units along with the labor representatives, who were still employees of PNA, to persuade them to disassociate from PNA and join PSEA; provided Debra Ferguson and the other named PNA representatives with PSEA propaganda, election cards, and other materials to aid them in inducing PNA local units to join PSEA; held meetings with PNA local memberships and, with the defendant PNA representatives, spoke in favor of affiliating with PSEA instead of PNA; "produced and promulgated false, malicious, and defamatory propaganda designed to destroy the reputation of PNA,"

App. at 22; offered employment with PSEA as an incentive to Debra Ferguson and the other defendant labor representatives to assist in affiliating the PNA local units with PSEA; and sought to induce other PNA labor representatives to leave PNA and become PSEA employees and to bring their local PNA units with them.

PNA also contends that the individual defendants who were its former labor representatives failed to negotiate in good faith successor collective bargaining agreements on behalf of their PNA units, which enabled PSEA's subsequent efforts to represent the units after the agreements expired; disparaged the reputation of PNA and its officials to persuade unit members to disassociate from the union; solicited unit members to sign election cards for PSEA representation; and engaged in disloyal activities including the creation and distribution of propaganda promoting PSEA at the expense of PNA.

PNA originally filed its complaint in the Court of Common Pleas of Dauphin County, setting forth the following eleven state-law claims in separate counts against one or more of the defendants:  I) breach of fiduciary duty, II) fraud and deceit, III) defamation, IV) commercial disparagement, V) unfair competition, VI) vicarious liability, VII) interference with present contractual relations (between PNA and its former representatives), VIII) interference with present and prospective contractual relations (between PNA and its local units), IX) interference with present and prospective contractual relations (between PNA and health care employers), X) aiding and abetting, and XI) conspiracy.  PNA sought compensatory and punitive damages.

PSEA removed the case to federal court on the ground that some of the claims were preempted by the National Labor Relations Act (NLRA), 29 U.S.C.   151-169, and/or the Labor Management Relations Act (LMRA), 29 U.S.C.   141-187, and moved for judgment on the pleadings on that basis.  In an order dated June 6, 1995, and amended July 28, 1995, the district court granted PSEA's motion, dismissing counts II, IV, V, VI, VII, VIII, IX, X and XI to the extent that they were based on conduct covered by the NLRA, and denied the motion as to counts I (breach of fiduciary duty) and III (defamation), concluding that these claims were not preempted.  The court remanded the case to the state court for disposition of the two remaining claims.  PNA appealed.  PSEA cross-appealed and filed a petition for writ of mandamus as an alternative.

PNA has not challenged our jurisdiction over PSEA's cross-appeal, but we must consider the jurisdictional question even where the parties are prepared to concede it.  Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993).  28 U.S.C. 1447(d) states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  This bar to review, however, has been held to apply only to remand orders issued pursuant to 28 U.S.C.   1447(c), that is, where the case was remanded due to a defect in the removal procedures or for lack of subject matter jurisdiction. Quackenbush v. Allstate Ins. Co., 116 S. Ct. 1712, 1718 (1996);

Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 346 (1976); Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 222 (3d Cir. 1995); Balazik v. County of Dauphin, 44 F.3d 209, 212-13 (3d Cir. 1995).  Here, the district court relied upon the discretionary ground stated in 28 U.S.C.   1367(c)(3), which permits a district court to decline to exercise supplemental jurisdiction over state claims where it has dismissed all claims over which it has original jurisdiction.  Accordingly, 28 U.S.C.   1447(d) is inapplicable.  See Trans Penn Wax, 50 F.3d at 224-25; PAS, 7 F.3d at 352.

Moreover, because the district court's remand order divested the federal court of all control over the action, our cases suggest that we would have jurisdiction under 28 U.S.C.   1291.  See Powers v. Southland Corp., 4 F.3d 223, 231 n.9 (3d Cir. 1993); Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1211 n.6 (3d Cir.), cert. denied, 502 U.S. 908 (1991); Carteret Sav. Bank, FA v. Shushan, 919 F.2d 225, 228 n.7 (3d Cir. 1990); McLaughlin v. ARCO Polymers, Inc., 721 F.2d 426, 428 n.1 (3d Cir. 1983).  The recent decision in Quackenbush supports this view. See 116 S. Ct. at 1719.  In light of our decision that we have appellate jurisdiction, the petition for mandamus filed in this case is moot.

II.

DISCUSSION

A.

NLRA Preemption

It is well established that state-law claims are presumptively preempted by the NLRA when they concern conduct that is actually or arguably either protected or prohibited by the NLRA, Belknap, Inc. v. Hale, 463 U.S. 491, 498 (1983), and by the LMRA when such claims rely upon an interpretation of a collective bargaining agreement, Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988).

The general framework for determining whether particular state-law claims are preempted by the NLRA remains that initially established by the Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 243-45 (1959), and more recently summarized as follows:

> [S]tate regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act.  The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility.  In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects.

Belknap, 463 U.S. at 498-99 (citations omitted) (emphasis added);

see also Local 926, Int'l Union of Operating Eng'rs v. Jones, 460 U.S. 669, 676 (1983).

Either of the polarities of the Garmon analysis, arguable protection or arguable prohibition, will ordinarily suffice. In this case, the district court examined both protection and prohibition under the NLRA in ruling on PSEA's preemption claim. The court rejected PSEA's argument that the conduct alleged was protected by the NLRA, concluding that "section 7 does not protect a labor union's conduct in secretly enlisting another union's labor representative in a scheme to defraud the latter union of its right to represent various groups of workers." PSEA does not challenge that holding on appeal.

On the other hand, when the district court focused on the prohibition prong of the Garmon/Belknap formulation it concluded that the nine claims set forth in Counts II and IV through XI were preempted because they were arguably prohibited by two provisions of the NLRA, primarily section 8(b)(1)(A) but also section 9. Section 8(b)(1)(A) makes it "an unfair labor practice for a labor organization or its agents . . . (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in [section 7 of the NLRA]." See 29 U.S.C. 158(b). Section 7 protects employees' rights to organize and, inter alia, to choose their bargaining agents.

PNA argues that the conduct it alleges PSEA and the individual defendants engaged in was directed at PNA, rather than the nurses, and therefore the conduct must necessarily have been unrelated to employees' organizational rights, which is the concern of section 7. We do not agree. Conduct which undermines the union representing a unit of employees, and thereby induces those employees to change their affiliation, arguably "constrains or coerces" those employees in their ability to exercise their free choice of an exclusive representative.

Indeed, in one of the various branches of the PNA/PSEA controversy, PNA itself filed an unfair labor practice charge with the NLRB, complaining that PSEA engaged in activities similar to those it asserts here at the Polyclinic Medical Center which interfered with PNA's collective bargaining agreement with that employer. The NLRB ruled that the conduct of both PSEA and the employer violated section 8 of the NLRA. See Polyclinic Medical Ctr., 315 N.L.R.B. 1257 (1995), enforced sub nom.Pennsylvania State Educ. Ass'n v. NLRB, 79 F.3d 139 (D.C. Cir. 1996). Both PNA's complaint and the Board's ruling illustrate the proposition that action targeted at a rival union may restrain employees in the exercise of their section 7 rights. Thus, even if the conduct here was directed at PNA, as it contends, rather than at the nurse-employees, it does not follow that section 8(b)(1) rights were not impacted.

Section 9 of the NLRA, the other provision the district court referred to as supporting its determination of preemption, gives the NLRB jurisdiction over selection of the union bargaining representative. As part of that responsibility, the NLRB has the authority to resolve disputes among competing unions and take action needed to ensure the workers' freedom of choice, including, if necessary, invalidation of an election. See NLRB

v. Savair Mfg. Co., 414 U.S. 270, 276-79 (1974); Weyerhaeuser Co., 247 N.L.R.B. 978, 978 n.2 (1980). Inasmuch as the conduct of which PNA complains arises, in essence, from a dispute or series of disputes between competing unions, each of whom sought to be the employees' exclusive representative, we agree with the district court that the conduct alleged may also have affected rights under section 9 as well as section 8(b)(1).

Notably, for preemption purposes a court need not decide whether the conduct alleged would be deemed to be prohibited by the NLRA, since it is enough that the conduct upon which the state causes of action are based is "arguably" prohibited. As the Court stated in Garmon, it is for the NLRB, not the courts, to decide whether the particular controversy falls within the scope of section 7 or 8 of the NLRA:

> At times it has not been clear whether the particular activity regulated by the States was governed by 7 or 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.
>
> . . . .
>
> . . . In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction.

Garmon, 359 U.S. at 244-46.

PNA suggests that even if the conduct alleged is arguably prohibited by the NLRA, as the district court found, this is not a case in which preemption should be applied. The Supreme Court's cases have referred to two circumstances in which state law is not preempted, even if the conduct at issue is arguably protected or prohibited by the NLRA. Those exceptions apply if the alleged conduct is of only "peripheral concern" to the NLRA, or "touches on interests . . . deeply rooted in local feeling and responsibility." Jones, 460 U.S. at 676 (citing Garmon, 359 U.S. at 243-44).

In this case, it is evident that we could not characterize the conduct at issue as of "peripheral concern" to the NLRA because it involves the core activities with which the Act is concerned: union organizing and the employees' election of an exclusive bargaining representative. However, we must also consider PNA's contention that this case falls within the local interest exception.

The Supreme Court has ordinarily applied this exception

in cases where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order such as violence, threats of violence, intimidation and destruction of property. See Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 136 (1976); Garmon, 359 U.S. at 247–48; see, e.g., UAW v. Russell, 356 U.S. 634 (1958) (upholding state court jurisdiction to entertain action by employee for harm resulting from strikers' threats of violence and exclusion by force). The Court has extended this exception to cover acts of trespass, see Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 190–98 (1978), and certain personal torts, such as intentional infliction of emotional distress, see Farmer v. United Bhd. of Carpenters, Local 25, 430 U.S. 290, 304–05 (1977), and malicious libel, see Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 57–63 (1966).

  At least with regard to the nine claims which the district court found preempted (Counts II, IV, V, VI, VII, VIII, IX, X and XI), PNA has not demonstrated that any of these falls within the category of claims which the Court has determined "touch[] interests deeply rooted in local feeling and responsibility." Belknap, 463 U.S. at 498. Although PNA claims that "in a free market economy that places economic actors in competition with one another, the states have a substantial interest in policing the market to ensure that free competition does not degenerate into the law of the jungle," Appellant's Brief at 40, when the competition is between unions such matters are the particular concern of the NLRA. PNA has cited no authority supporting its argument that market regulation of competing labor organizations is a matter so rooted in local concern as to prevent preemption by the federal labor laws.

  Even were we to conclude that the issue presented is one of particular state concern, the Court has cautioned that in such circumstances, any state concern must be balanced against the risk that the exercise of state jurisdiction over the tort claim would interfere with the regulatory jurisdiction of the NLRB. Jones, 460 U.S. at 676 (whether targeted conduct implicates local interests "involves a sensitive balancing of any harm to the regulatory scheme established by Congress"); Sears, 436 U.S. at 188–89 (preemption decision turns on "the nature of the particular interests being asserted and the effect upon the administration of national labor policies" of permitting state court jurisdiction); Farmer, 430 U.S. at 297 (examination of both "the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme" informs exceptions to NLRA preemption). As the Court explained in Sears:

>   The critical inquiry . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in Garner) or different from (as in Farmer) that which could have been, but was not, presented to the

Labor Board.  For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid.

436 U.S. at 197.

In the instant matter, much of the conduct forming the basis of the state tort claims also underlies the potential unfair labor practice charges, and the same facts would need to be determined in each proceeding.  This creates a risk of conflicting rulings from the state court and the Board, and threatens state interference with the NLRB's enforcement of national labor relations policy.  See Jones, 460 U.S. at 682 (state claim preempted where fundamental element of claim also had to be proved to make out a case under  8 (b)(1)(B) of the NLRA).

Because PNA's state claims would overlap with NLRB issues, this case is distinguishable from Sears, upon which PNA relies.  In Sears, the employer filed a trespass action in state court in an effort to end the union's picketing on its property. The Supreme Court rejected the union's claim that the action was preempted, noting that the controversy regarding the location of the picketing was unrelated to the issue Sears might have presented to the Board.  To make out a state-law claim of trespass, Sears needed only to prove the location of the Union's picketing.  An unfair labor practice charge, on the other hand, would have focused on the objectives of the picketing, an issue "completely unrelated to the simple question whether a trespass had occurred."  436 U.S. at 198.  Thus "permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices."  Id.

Similarly, in Belknap, Inc. v. Hale, 463 U.S. 491 (1983), another case relied on by PNA, the issues presentable in the two fora would have been unrelated.  During a strike the employer had made offers of permanent employment to the replacement workers, but after the strike was resolved the employer laid off the replacement workers to make room for returning strikers.  The fired replacement workers sued in state court for misrepresentation and breach of their employment contracts.  The Supreme Court concluded that the replacement workers' state court action was not preempted.  It noted that issues as to whether the strike was to protest unfair labor practices and whether the employer was obliged to accept returning strikers were matters for the Board, whereas the state court action there concerned the employer's obligations to replacement workers rather than union members one issue would not trench upon the others.  The controversies before the Board "would [not] have anything in common with the question whether Belknap made misrepresentations to replacements that were actionable under state law.  The Board would be concerned with

the impact on strikers not with whether the employer deceived replacements." Belknap, 463 U.S. at 510. Maintaining the misrepresentation action therefore "would not interfere with the Board's determination of matters within its jurisdiction and . . . such an action is of no more than peripheral concern to the Board and the federal law." Id. at 510-11.

In the case before us, by contrast, the allegations that PSEA and the individual defendants sought to undermine PNA and influence the outcome of the nurses' representation election would be the focus of both the unfair labor practice charges and PNA's state-law claims. The risk of conflicting rulings and interference with Board enforcement of national labor policy is evident.

Having determined that the claim at issue here (1) involves activity that is actually or arguably prohibited by the NLRA; (2) does not involve an issue deeply rooted in local feeling and responsibility; and (3) would risk substantial interference with the jurisdiction of the NLRA were it litigated in the state courts, we conclude that Counts II, IV, V, VI, VII, VIII, IX, X and XI are preempted under the Garmon analysis.

In reaching this conclusion, we reject PNA's attempt to replace the well-established Garmon analysis with an "identical controversy" test for preemption, which it urges this court to adopt based upon a statement in Sears and fragments of statements from other Supreme Court cases where the Court found no preemption.

Building upon its argument that the interests protected by PNA's state claims are different than those involved in an unfair labor practice case because they concern the common law rights of PNA as an entity, not the collective bargaining rights of its members, PNA argues that the claims that would be presented to the state court which involve PSEA's alleged interference with the operations of PNA are not identical to those that would be brought before the NLRB. Therefore, PNA concludes that under its identical controversy test there is no preemption. PNA also emphasizes that the state court could award it the $1,300,000 in damages it seeks for PSEA's alleged campaign to cripple and destroy PNA as a competitor, whereas the NLRB lacks authority to award such damages in an unfair labor practice proceeding. PNA thus insists that permitting its claim to go forward in state court poses no risk of interference with an NLRB proceeding.

While a respected commentator has noted that the Supreme Court's decisions in the labor preemption cases since 1945 "have been somewhat unclear if not inconsistent," Robert A. Gorman, Basic Text on Labor Law 766 (1976), we see no basis to hold, as PNA suggests, that the Supreme Court's more recent cases have replaced the analytic framework of Garmon and Belknap. Thus we see no justification for a court to abandon consideration of the threshold question, which is whether the matter at issue is peripheral to the concerns of the NLRA or a matter of particular local concern, and substitute therefor PNA's "identical controversy" test.

As the district court recognized, a Board proceeding

and a state-law cause of action will, by definition, deal with different claims and if their lack of identity were conclusive, the state claims would never be preempted. This would require us to abandon more than half a century of federal policy that places exclusive jurisdiction over issues of national labor relations in the hands of the agency created by Congress to deal with them. Absent more explicit direction from Congress or the Supreme Court, we see no reason to do so.

PSEA also relies on the NLRA for its claim of preemption of yet another cause of action asserted by PNA, the claim for defamation in Count III. In that count, PNA alleges that all of the defendants caused the dissemination of false and unprivileged statements to local PNA members, intending to destroy the reputation and good name of PNA in the professional community. The district court rejected PSEA's preemption claim based on the Supreme Court's holding in Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53 (1966). In its cross-appeal, PSEA contends that Linn is inapplicable.

The lawsuit in Linn that was the subject of the preemption issue had been brought by a managerial employee of the Pinkerton National Detective Agency, whose employees were the subject of a union organizing campaign. Linn, an assistant general manager at Pinkerton, alleged that the union and the other defendants distributed leaflets and other written material containing defamatory material about him. The Supreme Court rejected the argument that the suit was preempted, concluding instead that "where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court does have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him." Id. at 55.

PSEA contends that Linn is inapplicable because it concerned defamation of an individual who would have had no opportunity to obtain relief from the NLRB, whereas PNA is not without remedy since it can ask the NLRB to overturn the outcome of an election that may have been tainted by the allegedly defamatory statements.

Despite the initial appeal of PSEA's argument, upon close reading of Linn we conclude that this argument must fail. Nothing in the Supreme Court's Linn decision suggests any distinction between defamation of an individual and defamation of a labor union, nor did the Court suggest that the injured party should be permitted to seek relief in only one forum. To the contrary, the Court noted that in some situations it would be appropriate for a defamed union to seek relief both in the state courts and from the Board. See 383 U.S. at 66 ("When the Board and state law frown upon the publication of malicious libel, albeit for different reasons, it may be expected that the injured party will request both administrative and judicial relief."). Specifically, it acknowledged that "[a]n unsuccessful union would . . . seek to set the election results aside as the fruits of an employer's malicious libel. And a union may be expected to request similar relief for defamatory statements which contribute

to the victory of a competing union."  In such a situation, "the courts and the Board [would not] act at cross purposes since, as we have seen, their policies would not be inconsistent."  Id. at 66-67.  Insofar as PSEA's preemption argument as to the defamation cause of action rests on the identity of the victim, Linn is conclusive.

Alternatively, PSEA contends that the defamation claim fails as a matter of law because the majority of the alleged statements were merely expressions of opinion, and therefore PNA cannot prove that they are false, let alone made with knowledge or reckless disregard for their falsity.  But it is plain that at least the statement that PNA "had been indicted by the United States Attorney's office for election fraud" was a statement of fact, see App. at 40, and some of the statements set forth in paragraph 30 of the Complaint may also have been stated as fact. Additionally, PNA met its burden of pleading that the defendant employees made these statements with malice and knowledge of their falsity.  See App. at 46-48.  Because we must accept the allegations of the complaint as true and construe all inferences in PNA's favor, we will not look beyond the pleadings to assess the viability of PNA's cause of action for defamation but, rather, leave this task to the state court to which this cause of action was remanded.

B.

LMRA Section 301 Preemption

In addition to its reliance on the preemptive force of the NLRA, PSEA also claimed that the LMRA preempted Count I (breach of fiduciary duty) and Count II (fraud and deceit).

The district court rejected PSEA's claim, although as noted earlier Count II was among the nine causes of action the court held were preempted by the NLRA.  PSEA challenges in its cross-appeal the court's ruling of non-preemption of Counts I and II on LMRA grounds.

The Supreme Court has explained the principle of preemption pursuant to   301 of the LMRA as follows:

> if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles -- necessarily uniform throughout the Nation -- must be employed to resolve the dispute.

Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399,405-06 (1988).  See also Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 228 (3d Cir. 1995). This principle extends beyond suits alleging contract violations to suits grounded in tort as well. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985). Section 301 does not, however, "pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."  Id. at 212.  Only state-law rights and obligations that depend upon an interpretation of the

collective bargaining agreement are preempted.

PSEA contends that these two state tort claims are preempted by the LMRA because their resolution turns on an interpretation of the collective bargaining agreement between PNA and the Professional Staff Organization (PSO), the union that represented four of the individual defendants -- Debra Ferguson, Richard Lewis, Jeffrey Lewis, and Karen Schrader ("employee defendants").

PSEA argues that any duties of loyalty and truthfulness on which PNA bases its claims against the employee defendants for breach of fiduciary duty and fraud could only have arisen out of PSO's collective bargaining agreement with PNA, which was the exclusive contract governing the employee defendants' relationship with PNA. A determination whether the employees had breached such duties would accordingly require interpretation of that agreement. The district court rejected this argument because it found nothing in the collective-bargaining agreement giving rise to the fiduciary duties allegedly breached.

PSEA insists, however, that fiduciary duties may be implied from the collective-bargaining agreement and that the determination of an implied term in the agreement is exclusively a matter of federal contract interpretation. See Allis-Chalmers, 471 U.S. at 215 ("The assumption that the labor contract creates no implied rights is not one that state law may make. Rather, it is a question of federal contract interpretation whether there was an obligation under this labor contract to provide the payments in a timely manner, and, if so, whether [the employer's] conduct breached that implied contract provision.").

But Counts I and II of PNA's complaint are not grounded in the collective-bargaining agreement between PNA and PSO nor in any independent employment contracts between the employee defendants and PNA. Instead, these counts are based on Pennsylvania common law which recognizes, under agency principles, a duty of loyalty by an employee to an employer. SeeSylvester v. Beck, 178 A.2d 755, 757 (Pa. 1962); SHV Coal, Inc. v. Continental Grain Co., 545 A.2d 917, 920-21 (Pa. Super. Ct. 1988)(citing Restatement (Second) of Agency  394, 387, 400, 401), rev'd on other grounds, 587 A.2d 702 (1991).

Even if PNA could have grounded its action on an implied duty in the agreement, it need not have done so. As the Supreme Court has stated, "the plaintiff is the master of the complaint," and "may, by eschewing claims based on federal law, choose to have the cause heard in state court." Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987). Thus, "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement." Id. at 396 (emphasis in original). Counts I and II therefore do not require an interpretation of the collective-bargaining agreement and are not preempted by section 301. It follows that we find no basis to support PSEA's cross-appeal on either of the grounds it asserts.

III.

CONCLUSION

For the foregoing reasons, we will affirm the order of the district court, which dismissed nine of the claims asserted

by PNA as preempted by the NLRA and, after holding that counts I and III are not preempted, remanded those counts to state court. Each party to bear its own costs.
_____

PENNSYLVANIA NURSES ASSOCIATION v. PENNSYLVANIA STATE EDUCATION ASSOCIATION, et al.
Nos. 95-7457/7458/7645

ROSENN, Circuit Judge, concurring and dissenting.

Except as to the Pennsylvania Nurses Association's (PNA's) allegations charging the defendants with interfering with present and prospective contractual relations with local bargaining units and employers (Counts VIII and IX), the remaining counts of the complaint allege that four PNA employees, while on PNA's payroll, betrayed their employer, engaged in fraud and deceit, defamation, and other acts of personal misconduct in

violation of Pennsylvania's common law duty of basic loyalty by an employee to an employer.  Several of these counts also charge the Pennsylvania State Education Association (PSEA) and some or all of the other defendants with unfair competition, commercial disparagement, conspiracy, and other conduct in violation of state law.

The majority opinion holds that the Labor Management Relations Act (LMRA) does not preempt the specific charges relating to breach of fiduciary duty (Count I) and fraud and deceit (Count II), and affirms the district court's order remanding Count I to state court.  The majority concludes:  (1) that these counts are not grounded in either the collective bargaining agreement between PNA and PSO nor in any independent contracts between the employee defendants and PNA; and (2) they do not require an interpretation of the collective bargaining agreement.  I concur and also agree that there is no basis to support the PSEA's cross-appeal.

I concur further with the majority's conclusion that the NLRA does not preempt PNA's claim for defamation in Count III.  I agree that the Supreme Court's decision in Linn v. United Plant Guard Workers of America, 383 U.S. 53 (1966) controls.

On the other hand, the majority concludes that the remaining allegations are preempted by the National Labor Relations Act (NLRA).  Except for Counts VIII and IX which are arguably preempted, I do not believe that the NLRA preempts the other seven counts.

Although the plan allegedly concocted by the four former employees of PNA eventually enveloped the PSEA, the allegations, except as to Counts VIII and IX, have nothing whatsoever to do with the core activities of the NLRA.  These counts do not involve traditional union organization activities, employees' election of an exclusive bargaining representative, or unfair labor practices.  Rather, they basically concern forbidden conduct between employees and their employer, and activities of a competing employer that is prohibited by common law, not by federal law.  A state court's authority to resolve allegations of fraud, commercial disparagement, unfair competition, interference with employment contracts, and conspiracy in no way invades the central scheme of the NLRA.  Because presentation of these allegations to a state court does not offend federal labor policy, I would reverse the judgment of the district court insofar as it held the remaining seven counts preempted.  I therefore respectfully dissent.

I.

As does the majority, I accept as true the well-pleaded allegations in PNA's complaint and draw all inferences therefrom in favor of PNA.  PNA is a professional association of registered nurses and a nurses labor union.  Prior to June 30, 1993, it represented over 9000 nurses for collective bargaining purposes in 60 local bargaining units (locals).  These locals were located in private hospitals and public sector institutions in Pennsylvania and Delaware.

PNA employed defendant Debra Ferguson as a labor

representative on February 1, 1983, to serve in its labor union and collective bargaining program. As a labor representative, she had the responsibility for, inter alia, organizing locals, negotiating collective bargaining agreements between PNA and hospitals that employed their member nurses, and administering and enforcing collective bargaining agreements through grievance and arbitration procedures. Her responsibilities also included communications between PNA and its locals, and providing for the cultivation and maintenance of organizational relationships between them. As a paid labor representative of PNA, she also had the duty to keep her employer apprised of local unit activities, to act honestly, in good faith and in the best interests of PNA. This required that she take all necessary and appropriate measures to protect the PNA locals from raids by competing labor unions. PNA also hired the defendants Richard Lewis, Jeffrey Lewis, and Karen Schrader as labor representatives with similar duties.

Apparently, sometime in the first half of 1993, these PNA employees decided that they wanted to become employed as labor representatives by some other labor union and determined that they would be able to achieve such employment more readily if they could bring with them PNA locals that they represented in their capacity as labor representatives of PNA. They therefore undertook a program, although on PNA's payroll, to undermine their locals' relationship and loyalty to PNA by convincing them to disaffiliate.

Debra Ferguson had developed a strong interest in affiliating with PSEA, a labor union engaged in representing school employees. Her husband, Thomas, formerly employed with PNA until 1988, was employed by PSEA as a labor representative. Debra Ferguson sought to gain employment with PSEA by offering to bring with her as many PNA locals as possible. To do this, she developed a scheme, along with her husband and another PSEA representative, Alfred Nelson, to enlist the assistance of Richard Lewis, Jeffrey Lewis, and Karen Schrader to sway the PNA local and their leadership from PNA to affiliation with PSEA, with each eventually becoming employed with PSEA. Under their plan, they would act as PSEA labor representatives to the former PNA locals. PSEA knowingly assented and collaborated, and Thomas Ferguson and Alfred Nelson actively assisted. PSEA offered employment to and actively assisted and encouraged Debra Ferguson and her three co-employees in their efforts to make the switch in affiliation.

Under federal law, PNA had the exclusive right to negotiate and enter into new collective bargaining agreements during the period of time from 90 days before the existing contract between PNA and the employers expired. In other words, during this 90-day period, prior to the expiration of a collective bargaining agreement, no competing union is permitted to interfere with PNA's exclusive right to bargain for a new agreement on behalf of its local. Only in the event that a renewal contract is not reached prior to contract expiration could a competing union such as PSEA seek representation of the local.

Collective bargaining contracts between PNA and various hospitals were scheduled to expire during July and August of 1993, and Debra Ferguson and her three co-labor representatives led PNA to believe that they were faithfully negotiating renewal agreements on behalf of PNA. They led PNA to believe that they were protecting its interests as exclusive bargaining agent for the locals. However, pursuant to the plan of the four former employees and with the knowledge and active assistance of PSEA's representatives, Debra Ferguson and the other plotters, while still employed by PNA and presumably acting in its best interests, undertook to do the following: (1) They refrained from negotiating renewal agreements for the PNA locals under their responsibility, allowing the agreements to expire. This deprived PNA of its exclusive right to bargain on behalf of its locals prior to contract expiration; it rendered PNA vulnerable to other unions and gave PSEA the opportunity to seek representation of PNA locals; (2) They disparaged PNA's reputation, and the reputation of its officials, in their efforts to persuade locals to disaffiliate from PNA.

The defendant labor representatives actively solicited PNA locals to sign election cards for PSEA representation and engaged in other disloyal and improper activities, including the distribution of propaganda promoting PSEA at the expense of PNA. They also encouraged and aided PSEA to expand its union parameters to include representation of nurses.

Finally, Debra Ferguson and her three co-employees, with the assistance of PSEA, Thomas Ferguson, and Alfred Nelson, produced and promulgated false, malicious and defamatory propaganda designed to destroy the reputation of PNA, including a false report that PNA officials had been criminally indicted by the federal government. The conspiratorial conduct of PSEA and the individual defendants, the complaint alleges, was designed to cripple and destroy PNA as a nurses union and to facilitate the succession of PSEA as the primary nurses' union in Pennsylvania.

II.

The majority relies on the preemption doctrine as literally stated by the Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). Garmon held that where a labor relations activity is arguably subject to sections 7 or 8 of the NLRA, as the picketing there involved, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id.at 245. The majority concludes that the NLRA arguably prohibits the conduct alleged in PNA's complaint. Thus, it holds the seven counts identified in note 1 herein preempted.

I do not believe that the foregoing conduct is prohibited or arguably prohibited by either Sections 8 or 9 of the NLRA. As the majority explains, NLRA Section 8 prohibits conduct that restrains or coerces employees in their right to organize or bargain collectively through representation of their own choosing. 29 U.S.C. 157, 158. The conduct referred to in

the seven counts was not directed at the employees of the employer hospitals represented by PNA, but was directed at PNA as a legal entity. It neither restrained nor coerced employees of the hospitals or government facilities in their right to organize or bargain collectively through representatives of their own choosing. No campaigning, organizing or election processes were involved because the defendants' activities preceded such possibility.

Similarly, the conduct of which PNA complains in no way restrains or coerces employees in their right to organize. It is aimed at PNA. When PNA's four former employees commenced their scheme to switch the PNA locals to a union with whom they would seek employment, there was no organizational campaign on the part of PSEA or any other union to represent these locals. The existing contracts were not yet open to competing unions. No NLRA election procedures were involved; no validation or invalidation of an election conducted by the NLRB was sought. There was no recognitional dispute at that time between PNA and PSEA.

The majority points to the recent case of Polyclinic Medical Center, 315 N.L.R.B. 1257 (1995), enforced sub nom.Pennsylvania State Educ. Ass'n v. NLRB, 79 F.3d 139 (D.C. Cir. 1996) to "illustrate the proposition that action targeted at a rival union may restrain employees in the exercise of their Section 7 rights." (Maj. Op. p. 10) Polyclinic, however, is an example of a case properly before the Board, and wholly distinguishable from the case before this court. It in no way involves the issue before us in this case. PNA was the charging party in that case where it appropriately complained that the hospital-employer engaged in an unfair labor practice by unlawfully withdrawing recognition of PNA and entering into a bargaining agreement with PSEA, absent evidence that PSEA enjoyed the support of the majority of employees. The Board ordered Polyclinic to, inter alia, cease and desist from recognizing and bargaining with PSEA unless PSEA demonstrates its majority status. The District of Columbia Court of Appeals enforced the order, finding that Polyclinic and PSEA engaged in a collective bargaining agreement in violation of the NLRA. Pennsylvania State Educ. Ass'n, 79 F.3d at 154. In contrast, the case before us presents no issue of representation or election procedure.

The majority believes that Section 9 of the NLRA also arguably prohibits the conduct alleged in this case because the Section gives the NLRB the authority "to resolve disputes among competing unions, and take action needed to insure the workers' freedom of choice, including, if necessary, invalidation of an election." (Maj. Op. p. 11) Although this case has a union background, that alone does not grant the Board exclusive jurisdiction over every controversy arising between an employer and its employees or over every dispute between two unions. Surely, no one would suggest that the NLRB has jurisdiction over a land dispute merely because the parties are two distinct unions. No one would suggest that the Board has jurisdiction over a contractual dispute with respect to the right to operate a recreation camp for children because the dispute is between

competing unions.  Here, as discussed, the alleged conduct involves PNA as an employer and four individual defendants in their capacity as employees, over their contractual rights and duties unrelated to any collective bargaining agreement; it also involves conspiratorial conduct between those employees and another union wholly unrelated to authorities under the jurisdiction of the NLRB.  Section 9 grants the Board authority to resolve representation disputes among competing unions.  The parties in this case do not request the Board's intervention in an election or representation proceeding.

                              III.
          It must be noted that, in Garmon, the Court also carved out exceptions to the general rule of preemption that recognized traditional factors that preserve state jurisdiction.  It concluded that where the activity was merely of "peripheral concern" to the Labor Management Relations Act, the states retain the power to regulate.  359 U.S. at 243.  States also retain jurisdiction over matters of compelling local interest.  Id. at 247.  Thus, states should be free to award damages under state tort law for violent conduct, or for a basic breach of or interference with a contract between an employer and employee unrelated to any collective bargaining agreement.
          The majority here dismisses the "peripheral concern" exception without discussion, concluding that the conduct at issue involves "core activities with which the Act is concerned: union organizing and the employees' election of an exclusive bargaining representative." (Maj. Op. p. 12)  I do not believe the majority categorizes PNA's claims correctly.  This case does not implicate the core concerns of the Act.  Rather, it primarily requires a forum that can determine PNA's rights as an employer vis a vis its own employees, not the employees it represents for purposes of collective bargaining, and whether PNA's employees violated those rights.  Further, PNA seeks damages for the conduct of all the defendants which had not yet reached a point over which the NLRB had jurisdiction.
          Thus, PNA brought this suit for damages only in the state court for breach of fiduciary duty by its four former employees and business agents, for their fraud, deceit, and defamatory actions; it charged PSEA and its agents for unfair competition and interference in the employment contracts between PNA and its former labor representatives; and it sued all of the defendants for commercial disparagement and conspiracy.  These are matters that traditionally have occupied the attention and jurisdiction of state courts and at best are only of peripheral concern to the National Labor Relations Board.
          Moreover, the state of Pennsylvania has a substantial interest in protecting the rights of its citizens against the fraudulent and other misconduct alleged in this case.  Under Pennsylvania law, an agent, or employee, owes a duty of loyalty to his employer, and must act with utmost good faith and loyalty in furtherance of the employer's interests.  Kademenos v. Equitable Life Assurance Soc. of U.S., 513 F.2d 1073, 1076 (3rd Cir. 1975); Garbish v. Malvern Fed. Sav. & Loan Ass'n, 517 A.2d

547, 553-54 (Pa.Super 1986).

Although the Court has sustained the right of Congress to legislate in the areas of labor relations, Congress has not completely occupied the field. "[T]he areas that have been preempted by federal authority and thereby withdrawn from state power are not susceptible of delineation by fixed metes and bounds." Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 480 (1954). As the Court observed in Garner v. Teamsters Local 776, 346 U.S. 485 (1953), the Labor Management Relations Act "leaves much to the states, though Congress has refrained from telling us how much." Id. at 488.

For almost a quarter of a century following the enactment of the NLRA in 1935, the Court has endeavored to justify its preemption decisions in terms of congressional intent to preempt, "although the Act offers no specific guidance for applying this principle." 2 Patrick Hardin, The Developing Labor Law 1657 (3rd ed. 1992). Many of the Court's decisions "appear to have been based on pragmatic analysis of relevant fact and circumstances, but the results often were ascribed to the will of Congress." Id. at 1658.

In the 25 years that has elapsed since Garmon, the Court has refined, and perhaps even extended its exceptions to preemption. The Court has warned that:

> While the Garmon formulation accurately reflects the basic federal concern with potential state interference with national labor policy, the history of the labor pre-emption doctrine in this Court does not support an approach which sweeps away state court jurisdiction over conduct traditionally subject to state regulation without careful consideration of the relative impact of such a jurisdictional bar on the various interests affected.

Sears, Roebuck & Co. v. Carpenters, 436 U.S. 180, 188 (1977); see also Farmer v. Carpenters, 430 U.S. 290, 302 (1976). ("[I]nflexible application of the [Garmon] doctrine is to be avoided, especially where the state has a substantial interest in regulation of the conduct at issue and the state's interest is one that does not threaten undue interference with the federal regulatory scheme.").

Post-Garmon case law reveals that the Court has made a detailed factual analysis in each case before it in an effort to ascertain whether the claims in the state court would offend federal policies established by the Board. Under the current status of the law, the Court is concerned with not only preserving federal jurisdiction in labor cases, but has exhibited, since Garmon, a sensitive and pragmatic concern for the preservation of claims in state court that do not encroach upon the Board's jurisdiction.

In Farmer, the Court concluded that Hill, a member of the Carpenter's Union who complained of union discrimination in its hiring hall and other tortious conduct, could pursue a tort action brought in a state court against the union and its

officials to recover damages for intentional affliction of emotional distress. 430 U.S. at 292-93. The Court reasoned that, in light of the discrete concerns of the federal scheme and state tort law, the potential for interference with the Board's proceedings if a complaint were filed with the court "is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens." Id. at 304. In Sears, the Court noted that when a claim involves conduct arguably prohibited by the Act, the "critical inquiry" is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the labor board." 436 U.S. at 197.

The majority dismisses PNA's "identical controversy" argument asserting that PNA is attempting to construct a new exception to Garmon, or replace Garmon's analytical framework with a new test. I do not suggest that this court abandon the Garmon analysis. However, I believe the "identical controversy" test can aid courts in determining if conduct "arguably prohibited" by the NLRA may be litigated in a state court. Supreme Court case law focusses on whether the conduct is central to the Act, whether the state interest in regulation is compelling, and whether the state's exercise of jurisdiction risks interference with the federal regulatory scheme. See e.g.Belknap, 463 U.S. 491, Farmer, 430 U.S. 290, Linn, 383 U.S. 53.

I disagree with the majority here that the Supreme Court's decision in Belknap, 463 U.S. 491, is distinguishable. In fact, Belknap strongly supports PNA's position that its seven counts are not preempted. In that case, negotiations for a new contract between the union and employer reached an impasse, some employees struck, and the employer unilaterally granted a wage increase to employers who stayed on the job. The wage increase became the basis for an unfair labor practice charge filed by the union with the Board and the employer countered with charges of its own. The employer hired replacement workers, promising permanent employment, but dismissed them to make room for the returning strikers. The replacement workers sued under state law theories of misrepresentation and breach of employment contract. Despite the unfair labor practice proceedings before the Board growing out of the strike, the Court held that the Act did not preempt the replacement workers state law suit. It stated:

> [T]he suit for damages for breach of contract could still be maintained without in any way prejudicing the jurisdiction of the Board or the interest of the federal law in insuring the replacement of the strikers. The interests of the Board and the NLRA, on the one hand, and the interests of the State in providing a remedy to its citizens for breach of contract, on the other, are "discrete" concerns. We see no basis for holding that permitting the contract cause of action will conflict with the rights of either the strikers or the employer or would frustrate any policy of the federal labor laws.

Id. at 512 (citations omitted).  In so holding, the court found that the returning workers' claims were not "identical" to the controversy before the Board.  The Board's focus was on the rights of the striking workers, while the state court would focus on the rights of the replacement workers.  Id. at 510.

In the instant case, even if a proceeding were initiated before the Board, the interests, as in Belknap, are different.  The Board would be concerned with the defendants' coercive conduct towards the union nurses affecting their freedom of choice; the state court would be concerned with the breach of the defendants' obligations to PNA.  As in Belknap, the state court in this case "in no way offers [the plaintiff] an alternative forum for obtaining relief that the Board can provide."  Id. at 510.  Although not dispositive, an important factor in preemption analysis is that the NLRB is unable to award relief to PNA for the alleged damage caused by PSEA and the individual defendants.  See, e.g. Farmer, 430 U.S. at 304 (noting that the Board could not award damages for plaintiff's alleged pain, suffering, and medical expenses), Linn v. Plant Guard Workers, 383 U.S. 53, 64 (1965) (noting the Board's inability to provide redress for personal injury caused by malicious libel).

This case is distinguishable from Operating Engineers v. Jones, 460 U.S. 669 (1982).  In Jones, a newly appointed supervisor filed a charge before the NLRB, alleging that the union instigated the supervisor's discharge because he was not a member in good standing with the union.  The Board declined to issue a complaint.  The supervisor then filed suit in state court, alleging that the union interfered with his employment contract by coercing the company to breach the contract.  The Supreme Court found the supervisor's state law claim preempted by the NLRA.

The Court found that the alleged conduct was arguably prohibited by the Act, and that the controversy before the state court was identical to that brought before the Board.  In Jones, the resolution of both the state law and the Board action involved an analysis of whether the union coerced the employer into terminating the supervisor.  In the instant case, however, there could only be the remote possibility that the Board might be called upon to determine if the defendants coerced the nurses in the collective bargaining units in the exercise of their Section 7 rights.  In contrast, the state court would focus on whether the defendants' conduct injured PNA.

Unlike Jones, the exercise of state jurisdiction over the common law tort claims in the instant case would not have any effect on federal labor policy.  The court would focus on the conduct as it specifically affected the employer-employee relationship between PNA and the individual defendants, not employees in the collective bargaining units, and on PSEA's entrepreneurial behavior in violation of state law.  Thus, state jurisdiction here creates no significant risk of impact on federal labor law.

IV.

In contrast to the seven counts discussed above, I acknowledge that PNA's Counts VIII and IX involve matters appropriate for the Board. In Count VIII, PNA alleges that the defendants interfered with its relationship with its local bargaining units. PNA asserts that the defendants were aware of its right to bargain with its locals prior to the expiration of their bargaining agreements. The defendants allegedly interfered with PNA's prospective contractual relations with the local units with the intent to displace PNA as the exclusive bargaining agent. Similarly, in Count IX, PNA alleges that the defendants interfered with the collective bargaining agreements between PNA and various health care employers.

These two counts focus on the bargaining agreements and the relationship between PNA, their locals, and their employers. The alleged behavior is arguably prohibited by both Sections 8 and 9 of the NLRA. In contrast to the seven counts discussed above, Counts VIII and IX involve core concerns of the Act. Thus, I agree with the majority that the NLRA preempts Counts VIII and IX.

## V.

To recapitulate, I respectfully dissent from the opinion of the majority in affirming the order of the district court dismissing Counts II, IV, V, VI, VII, X and XI as preempted by the NLRA. However, I concur with the majority that the NLRA preempts Counts VIII and IX of PNA's complaint.

I further concur with the majority in affirming the order of the district court in holding that Counts I and III are not preempted and directing each side in this appeal to bear its own costs.