NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0271n.06

No. 21-1420

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

VINCENT PORTER,

      Plaintiff - Appellant,

v.

NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION,

      Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 11, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: BOGGS, THAPAR, and BUSH, Circuit Judges.

BOGGS, Circuit Judge. Vincent Porter was suspended from being an NFL agent by the National Football League Players Association ("NFLPA") after he was criminally indicted. He successfully appealed his suspension through arbitration and now brings state-law claims alleging that the NFLPA acted tortiously in suspending him and otherwise harassing him. The district court held that his claims are preempted by federal labor law because they challenge the NFLPA's exclusive right to represent NFL players and involve interpretation of a labor contract. We affirm in part, reverse in part, and remand for further proceedings.

## I.    BACKGROUND

Appellant Vincent Porter is an NFL agent—or, more technically, a certified contract advisor licensed by the NFLPA. Under federal labor law and the collective-bargaining agreement between the NFLPA and the NFL, only agents certified by the NFLPA may represent players in negotiations

with NFL teams. To be certified, prospective agents must agree to the NFLPA's Regulations Governing Contract Advisors (the "Regulations").[1] These Regulations govern agents' conduct and set out disciplinary and dispute-resolution procedures. They also prohibit agents from engaging in any conduct involving fraud or dishonesty.

That latter component of the Regulations became relevant to Porter in 2014, when he was charged with conspiracy to commit wire fraud. The charge was ultimately dismissed, and Porter entered into a deferred prosecution agreement for a charge of misprision. In response to all this, the NFLPA Committee on Agent Regulation and Discipline ("CARD") filed a disciplinary complaint against him and immediately suspended his contract-advisor certification.[2] The NFLPA also began independently investigating his conduct.

Porter appealed his suspension, denying that he had breached the Regulations. The NFLPA denied his request for reinstatement. The dispute went to arbitration in March 2016. After the hearing, but before the issuance of the arbitrator's decision, the criminal charge against Porter was dismissed. The arbitrator concluded that CARD had failed to sustain its burden in proving that Porter had engaged in conduct prohibited by the Regulations.

Porter alleges that, despite the result of arbitration, the NFLPA continued to harass him and interfere with his business. The NFLPA proceeded with its investigation into his conduct, including questioning the accuracy of sworn statements that he made while appealing his suspension. Porter also points to email correspondence between him and several NFLPA officials (as well as a failure

---

[1] Porter does not quote the Regulations in his First Amended Complaint. He did, however, include a copy of the Regulations as an exhibit and refer to them. We may therefore consider the Regulations in ruling on the motion to dismiss. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[2] Porter does not explicitly allege that he was suspended, though he describes appealing his suspension. The disciplinary complaint is an exhibit to the First Amended Complaint and informs Porter of his suspension.

to respond to emails) which he views as intentional attempts to prevent him from successfully performing as an agent.

Porter initially sued the NFLPA in Michigan state court in 2019. The NFLPA removed the case to federal court. Porter's amended complaint included five state-law counts: (1) tortious interference with a business expectancy; (2) tortious interference with a business relationship; (3) negligence; (4) breach of duty; and (5) breach of contract. The NFLPA moved to dismiss and to compel arbitration. In granting that motion, the district court held that Porter's claims were preempted by federal law. Specifically, the district court found preemption under § 9 of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the "NLRA") and § 301 of the Labor Management Relations Act, 29 U.S.C. § 141 et seq. (the "LMRA"). Porter now appeals.

## II.     ANALYSIS

We review the grant of a motion to dismiss under Rule 12(b)(6) de novo. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). A conclusion that a state cause of action is preempted by federal law "is an affirmative defense upon which the defendants bear the burden of proof." *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir. 2007) (quoting *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005)). Porter argues that federal labor law does not preempt his state-law claims. In response, the NFLPA argues for broad federal preemption under the NLRA and the LMRA.

### A. NLRA Preemption

Section 9(a) of the NLRA grants designated representatives the right to be "the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a). State-law "causes of action are presumptively preempted if they concern conduct that is

actually or arguably either prohibited or protected by the [NLRA]." *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983); *see also Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 802-06 (3d Cir. 1996) (holding that § 9 of the NLRA has preemptive effect). In arguing NLRA preemption, the NFLPA suggests the following two-step inference. First, it cites a district court case holding that to the extent Porter's claims "target the NFLPA's representational structure" they are preempted by § 9(a). *Dickey v. Nat'l Football League*, No. 17-cv-12295, 2018 WL 4623061, at *9 (D. Mass. Sept. 26, 2018), *aff'd*, No. 19-1097, 2020 WL 6819135 (1st Cir. 2020). Second, it argues that Porter's claims *do* target its representational structure. That is because "agents are permitted to negotiate player contracts in the NFL only because the NFLPA has delegated a portion of its exclusive representational authority to them." *White v. Nat'l Football League*, 92 F. Supp. 2d 918, 924 (D. Minn. 2000).

In *Dickey*, an agent took issue with the NFLPA's application of its "three-year rule" under which agents are automatically de-certified if they fail to negotiate a contract within three years. 2018 WL 4623061, at *1-2. The agent sued, arguing in part that the NFLPA selectively enforced the rule against him, while granting exceptions to others. *Ibid*. Most of Dickey's state-law claims, the court observed, were based on the collective-bargaining agreement and therefore preempted by § 301 of the LMRA. His remaining claims were preempted by § 9(a) of the NLRA "[i]nsofar as [they] target the NFLPA's representational structure." *Id*. at *9. The court held that:

> [T]he NFLPA is the exclusive representative of all NFL players. Certified agents' authority to represent NFL players in negotiating with NFL clubs exists solely by virtue of the NFLPA's discretionary decision to delegate some of its § 9(a) authority to those agents. Section 9(a) thus preempts Dickey's challenges to the methods by which the NFLPA delegates this authority, which are governed by the NLRA's system of exclusive representation.

*Ibid*.

According to the NFLPA, because all aspects of an agent's career exist by virtue of the NFLPA's delegation of its exclusive representational authority, the NLRA preempts any causes of action touching how the NFLPA exercises that delegation. While neither this court nor any other appellate court has ever held that § 9 has so broad a preemptive effect, we do agree that § 9 preempts state-law claims that directly challenge the NFLPA's right of exclusive representation. We do not agree, however, with the holding in *Dickey* that all "challenges to the methods by which the NFLPA delegates this authority" are preempted. *See* 2018 WL 4623061, at *9. Such a holding is too broad and would drive the scope of preemption too far afield from § 9's purpose of establishing one exclusive bargaining agent for a set of employees. *See Loc. 926, Int'l Union of Operating Eng'rs, AFL-CIO v. Jones*, 460 U.S. 669, 676 (1983) ("When . . . the conduct at issue is only a peripheral concern of the [NLRA] . . . we refuse to invalidate state regulation or sanction of the conduct."). Without any authority suggesting so broad a preemptive scope, we decline to adopt one.

Looking at Porter's claims, the first two *do* appear to directly challenge the NFLPA's right of exclusive representation. His claim for tortious interference with a business expectancy, for example, alleges that he "had valid, existing business relationships with clients, along with the prospect of future business with clients." The same is true of his claim for tortious interference with a business relationship. But any legal entitlement he might have to those business relationships must necessarily derive from the NFLPA's delegation of its exclusive right to representation. If a state court granted Porter relief on those claims, it would have to hold that Porter had a right to represent NFL players. But only the NFLPA has that right; and that right is established by the NLRA. Those claims are therefore preempted by § 9.

Porter's other claims, though, do not directly challenge the NFLPA's right of exclusive representation. His negligence and breach-of-duty claims refer to the NFLPA's alleged duty not to suspend his certification without cause. And his breach-of-contract claim is based on an alleged contractual obligation not to suspend him without cause. These claims concern only the NFLPA's actions towards Porter within the bounds of its contractual or fiduciary relationships with him. They do not concern an entitlement to or usurpation of the NFLPA's NLRA-protected rights. Granting relief to Porter on those claims would not interfere with the NFLPA's right to be the exclusive representative of NFL players.

We express no opinion on whether the NFLPA did in fact owe any fiduciary or contractual duties to Porter or whether any such duties were breached. We hold only that a state court could, in theory, grant relief to Porter without interfering with the regulatory scheme established by the NLRA. Those claims are not, therefore, preempted by § 9 of the NLRA, and we reverse the district court's application of preemption as to those claims.

### B. LMRA Preemption

The district court also held that Porter's claims were preempted by § 301 of the LMRA. Primarily citing *Black v. NFLPA*, 87 F. Supp. 2d 1 (D.D.C. 2000), it observed that § 301 preempts any state-law claims that substantially depend on the meaning of a collective-bargaining agreement. We disagree that § 301's preemptive effect applies to Porter's claims.

Section 301 of the LMRA states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U. S. C. § 185(a). The Supreme Court has explained interpretation of a labor agreement "must be resolved by reference to uniform federal law, whether such questions arise in the context of a

suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). "Given the importance of maintaining uniform federal law, the Supreme Court 'has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement.'" *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) (quoting *Smolarek v. Chrysler Corp.*, 879 F.3d 1326, 1329 (6th Cir. 1989) (en banc)). That preemption applies to state-law tort claims, too, unless the claims are "independent" of the collective-bargaining agreement. *Ibid.*

This court has established a two-step inquiry to determine whether a state-law claim is sufficiently independent to avoid preemption. "First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement." *Id*. at 906 (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216-17 (6th Cir. 1994)). "Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law." *Ibid*. If at either step the answer is "yes," the claim is preempted. *Ibid*.

Most LMRA preemption cases involve collective-bargaining agreements. That much is clear from the frequent reference to those agreements in the case law. The NFLPA, however, argues that § 301's preemptive effect is not limited to collective-bargaining agreements. Preemption also applies to the Regulations, it argues, which are a labor agreement "significant to the maintenance of labor peace."

The NFLPA is correct that § 301's preemptive effect reaches beyond collective-bargaining agreements. We do not agree, however, that it reaches claims stemming from the Regulations. The NFLPA insists that any labor agreement significant to labor peace is covered and that the Regulations are significant because of the importance of independent agents in the NFL ecosystem.

True, § 301 covers more than just collective-bargaining agreements. *See Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) (holding that a "strike settlement agreement" between an employer and a labor organization that was not an exclusive representative was a contract within the meaning of § 301). Congress knew how to use the term "collective bargaining agreement" yet declined to do so in § 301. *Id.* at 25. But the term "contract" in § 301 does not encompass *every* agreement significant to the maintenance of labor peace. Instead, a "contract" under § 301 must be "an agreement *between employers and labor organizations* significant to the maintenance of labor peace *between them.*" *Id*. at 28 (emphasis added).

The Regulations are not an agreement between employers and labor organizations. Instead, they are an agreement between a labor organization and its delegates. They are not, therefore, a "contract" within the meaning of § 301, although the NFLPA views them as integral to labor peace. In so holding we decline to adopt the reasoning outlined in *Black v. NFLPA*, 87 F. Supp. 2d 1 (D.D.C. 2000), which applied LMRA preemption because the Regulations were "formulated in accordance with the collective bargaining agreement" between the NFLPA and the NFL. *Id*. at 4. The fact that the Regulations are in some sense dependent on a collective-bargaining agreement does not mean they are themselves a labor contract covered by § 301.

We need not proceed to the second step and analyze whether Porter's claims require interpretation of the Regulations since the Regulations are not a contract as contemplated by § 301. Because the district court held otherwise, we reverse the holding that Porter's claims are preempted by the LMRA.

**C. Motion to Compel Arbitration**

The NFLPA sought to compel arbitration alongside its motion to dismiss. Because the district court held Porter's claims were preempted, it did not reach the arbitration issue. The

NFLPA now argues in the alternative that Porter's claims belong in arbitration. Without expressing any opinion on the merits of that question, we remand for the district court to decide in the first instance.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.