

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-15-1998

# Hudson United Bank v. Litenda Mtg Corp

Precedential or Non-Precedential:

Docket 97-5074

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Hudson United Bank v. Litenda Mtg Corp" (1998). *1998 Decisions*. Paper 80.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/80

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 15, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5074

HUDSON UNITED BANK, banking corporation of the State
of New Jersey,
        Appellant

v.

LITENDA MORTGAGE CORP.;
THEODORE H. HOWARD;
LINDA M. HOWARD, his wife;
FEDERAL HOME LOAN MORTGAGE CORPORATION,
doing business as Freddie Mac;
GARY S. YOUNG;
YOUNG, DIMIERO & SAYOVITZ;
RICHARD G. NORWALK AND NORWALK ASSOCIATES

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 96-cv-02204)

Argued Thursday, December 11, 1997

BEFORE: GREENBERG, ROTH, and GARTH,
Circuit Judges

(Opinion filed April 15, 1998)

Richard W. Mackiewicz, Jr. (Argued)
Burke & Mackiewicz
625 Washington Street
Hoboken, New Jersey 07430

Attorneys for Appellant

Lance J. Wolf (Argued)
Federal Home Loan Mortgage
 Corporation
Legal Department
8200 Jones Branch Drive
McLean, VA 22102

Gerald T. Ford
Landman, Corsi, Ballaine &
 Ford
One Gateway Center
Suite 500
Newark, NJ 07102

Attorneys for Appellees
Litenda Mortgage Corp.,
Theodore H. Howard,
Linda M. Howard, his wife,
Federal Home Loan Mortgage
Corporation d/b/a Freddie Mac

Brian Corrigan
Law Office of Brian Corrigan
150 Morris Avenue
P.O. Box 476
Springfield, NJ 07081

Attorney for Appellees
Richard G. Norwalk and
Norwalk Associates

2

OPINION OF THE COURT

GARTH, Circuit Judge:

This is an appeal of a district court order denying a motion for reconsideration filed by Hudson United Bank ("Hudson"). The district court had dismissed Hudson's federal claims, and remanded the state claims to state court pursuant to 28 U.S.C. S 1367(c). When Hudson moved for reconsideration of the dismissal and attempted to amend its complaint, the district court held that it had lost jurisdiction to hear the case when the remand order was sent to state court. Accordingly, Hudson's motion was denied.

We hold that the district court had jurisdiction to entertain Hudson's motions. Thus, we reverse.

I.

On March 20, 1995, Theodore H. Howard, Linda M. Howard, and their company, LiTenda Mortgage Corp., (collectively, "LiTenda") borrowed almost two million dollars from the Hudson United Bank ("Hudson") tofinance LiTenda's mortgage selling and servicing business. At the time, LiTenda was a mortgage seller/servicer approved by the Federal Home Loan Mortgage Corporation ("Freddie Mac").1 As collateral for the loan, Hudson accepted LiTenda's contractual rights to income derived from servicing a portfolio of mortgages for Freddie Mac.

On May 2, 1996, Freddie Mac terminated LiTenda's eligibility as a seller/servicer. In a letter faxed to LiTenda, Freddie Mac stated that LiTenda's eligibility was revoked

_____

1. Freddie Mac is a federally chartered, sponsored, and regulated corporation that purchases home mortgages from lenders and sells securities to the public to fund the purchases. Mortgages are only purchased from, and serviced by, approved seller/servicers under the terms of contracts authored by Freddie Mac. See  12 U.S.C. S 1454 (1989 & West Supp. 1997); American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp., 75 F.3d 1401, 1404 (9th Cir. 1996).

because LiTenda had violated their contractual agreement in at least nine different ways--among them, by pledging LiTenda's contractual rights as collateral to secure the loan with Hudson.2 The termination letter directed LiTenda to return all files and mortgage documents to Freddie Mac, who in turn transferred its portfolio to another servicer.

Left without Freddie Mac's business, LiTenda's financial condition deteriorated, and the loan with Hudson went into default.3 When Hudson sought the contract rights it believed it was owed under the loan agreement with LiTenda, Freddie Mac rejected Hudson's claim.

Hudson responded by filing a complaint in state court containing claims against both LiTenda and Freddie Mac.4 Hudson's claims against Freddie Mac alleged that Freddie Mac was illegally withholding from Hudson the benefits it was due as collateral under the terms of its loan agreement with LiTenda. Freddie Mac then removed the case to federal court pursuant to 12 U.S.C. S 1452(f), which confers federal subject matter jurisdiction over any civil action to which Freddie Mac is a party.

Once in federal court, Freddie Mac filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ.

---

2. The contractual relationship between Freddie Mac and LiTenda was governed by a Seller/Servicer Guidebook authored by Freddie Mac. The Guidebook set out the rights and duties to which LiTenda was subject as a seller/servicer of Freddie Mac's mortgages. The nine violations of the Guidebook that Freddie Mac alleged included: failure to account properly for the disposition of funds; failure to fund and safeguard funds properly; failure to comply with financial responsibilities; and failure to maintain qualified facilities and staff.

LiTenda subsequently petitioned Freddie Mac for review of the termination decision. On August 1, 1996, Freddie Mac affirmed its decision to terminate LiTenda's eligibility, calling LiTenda's violations of the contract "especially egregious," and stating that LiTenda's "record at Freddie Mac was marginal at best."

3. LiTenda filed a petition in the United States Bankruptcy Court for the District of New Jersey on November 21, 1996.

4. Hudson also named several other parties as defendants. For the sake of clarity, however, we will focus our analysis here on the claims against LiTenda and Freddie Mac.

4

P. 12(b)(6). Freddie Mac argued that Hudson had failed to state a claim against Freddie Mac because Hudson's claim under the loan agreement derived solely from LiTenda's rights, and LiTenda's contract rights had been extinguished when Freddie Mac revoked LiTenda's privileges as a seller/servicer. Because LiTenda had no rights against Freddie Mac, Hudson could not use its claim to LiTenda's rights to state a cause of action against Freddie Mac.

On November 26, 1996, the district court granted Freddie Mac's motion to dismiss for failure to state a claim. Agreeing with Freddie Mac that Hudson had no claim against Freddie Mac because LiTenda had no such claim, the district court dismissed all of the counts against Freddie Mac under Fed. R. Civ. P. 12(b)(6).5 Left without an original basis for federal subject matter jurisdiction, the district court exercised its discretion under 28 U.S.C. S 1367(c), and remanded the remaining portions of the case against LiTenda. A certified copy of the remand order was mailed to the state court the next day, on November 27, 1996.

On December 6, 1996, Hudson filed several post-dismissal motions in the district court. First, Hudson moved for the district court to reconsider its dismissal pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b). According to Hudson, the district court had wrongly concluded that LiTenda's rights were extinguished when Freddie Mac revoked LiTenda's status as a seller/servicer. Pointing to the contract between Freddie Mac and LiTenda, Hudson noted that this was true only if LiTenda's status had been revoked "with cause." If the termination was "without cause," Hudson continued, then the contract entitled LiTenda (and thus Hudson) to a termination fee equal to the market value of LiTenda's servicing portfolio. Although Hudson had not raised this issue previously,

_____

5. Properly relying on Pension Benefits Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), the district court considered the portions of the Guidebook attached by the defendant and relied on by both parties. Those portions of the Guidebook made clear that LiTenda had no continuing rights in the servicing contract that Hudson could rely on, such that it was clear as a matter of law that Hudson was not entitled to relief.

5

Hudson now argued that the termination was "without cause."

Hudson also moved to amend its complaint. The amended complaint contained what Hudson modestly termed "prophylactic" changes in its cause of action; in particular, the proposed amended complaint alleged for the first time that Freddie Mac had terminated LiTenda's portfolio "without cause."[6]

The district court denied Hudson's motion in an order dated January 13, 1997. The district court quoted Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 225 (3d Cir. 1995) for the proposition that "a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court." Id. Because a certified copy of the remand order had been sent to the state court on November 27, 1996, the district court concluded that its jurisdiction to hear Hudson's motion for reconsideration had been divested on that date. The district court denied Hudson's motion without reaching the merits.

Hudson filed a timely appeal.

II.

Although neither party contests our appellate jurisdiction, we have an independent duty to ensure that we have jurisdiction over a case or controversy before we attempt to resolve it. See PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993). In this case, the inquiry is complicated by the fact that there are three distinct orders that Hudson has attempted to appeal.

The first is the November 26, 1996 order dismissing Hudson's claims against Freddie Mac under Fed. R. Civ. P. 12(b)(6), which we will refer to as "the dismissal order." The second is the November 26, 1996 order remanding the remaining claims against LiTenda to state court pursuant

_____

6. Hudson also moved for a stay of the remand order. As the remand order had already been sent to state court, however, this motion was moot.

6

to 28 U.S.C. S 1367(c), which we will refer to as "the remand order." The third is the January 13, 1997 order denying Hudson's motion for reconsideration, which we will refer to as "the reconsideration order."

Our cases establish that we have appellate jurisdiction over the dismissal order pursuant to 28 U.S.C. S 1291. See Carr v. American Red Cross, 17 F.3d 671, 674-77 (3d Cir. 1994) (holding that a dismissal order preceding aS 1367(c) remand order is reviewable by direct appeal pursuant to 28 U.S.C. S 1291). The reasoning of Carr also makes clear that we have appellate jurisdiction over the reconsideration order pursuant to 28 U.S.C. S 1291. See id.

Although we will resolve this case without reviewing the remand order, we note that we are authorized to exercise jurisdiction over the remand order as well. It is clear that 28 U.S.C. S 1447(d) does not bar appellate review of the remand order, because it was issued not under S 1447(d), but rather pursuant to 28 U.S.C. S 1367(c). See, e.g., Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n, 90 F.3d 797, 801 (3d Cir. 1996) (holding that S 1447(d) is inapplicable to a remand order made pursuant to S 1367(c)), cert. denied, 117 S. Ct. 947 (1997). Second, although we would be able to review the remand order only through a petition for mandamus, see PAS, 7 F.3d at 353, we may treat Hudson's notice of appeal as a mandamus petition. See Korea Exch. Bank v. Trackwise Sales Corp., 66 F.3d 46, 51 (3d Cir. 1995).7

_____

7. Judge Greenberg is of the view that when, as here, a district court dismisses the federal claims from a case removed from state court and remands the state claims to state court pursuant to 28 U.S.C. S 1367(c)(3), instead of exercising supplemental jurisdiction over them, that, upon reversal of the dismissal of the federal claims, the court of appeals may order that the state claims be reinstated without exercising mandamus jurisdiction. He believes that an appeal by the plaintiff in such a case is, in reality, from the dismissal order and not from the remand order, because the plaintiff may be content to litigate the state claims in state court where the plaintiff started the action. Therefore, the order from the court of appeals reinstating the state claims in federal court is merely incidental to the reversal of the dismissal and is authorized by 28 U.S.C. S 2106 which provides that after a reversal of a ruling by a district court, a court of appeals "may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings to be had as may be just under the circumstances."

III.

The question posed by this case is whether the district court had jurisdiction to adjudicate Hudson's motion for reconsideration. Our answer is yes.

A.

Congress has designed our federal court system so that it affords civil litigants ample opportunity to seek review of adverse decisions in the inferior courts. First, litigants may request reconsideration of an unfavorable result in the district court. See Fed. R. Civ. P. 59(e), 60(b). Second, losing parties are entitled to seek review of "all final orders" in the court of appeals. See 28 U.S.C. S 1291. Third, litigants may request rehearing by a full court of appeals. See Fed. R. App. P. 35. The animating concept behind this forgiving structure is that justice is best served by the checks and balances afforded by regular opportunities for judicial review.

Despite this general design, the need to deter vexatious litigation has led Congress to carve out exceptions in which review is curtailed or even eliminated. One such exception is the rule against review of remand orders following improper removal to federal court, currently codified at 28 U.S.C. S 1447(c) and (d).[8] This longstanding rule divests the

_____

8. The text of 28 U.S.C. S 1447(c) and (d) reads as follows:

    (c) A motion to remand the case on the basis of any defect other
    than lack of subject matter jurisdiction must be made within 30
    days after the filing of the notice of removal under section
1446(a).
    If at any time before final judgment it appears that the district
court
    lacks subject matter jurisdiction, the case shall be remanded. An
    order remanding the case may require payment of just costs and
    any actual expenses, including attorney fees, incurred as a result
of
    the removal. A certified copy of the order of remand shall be
mailed
    by the clerk to the clerk of the State court. The State court may
    thereupon proceed with such case.
    (d) An order remanding a case to the State court from which it was
    removed is not reviewable on appeal or otherwise, except that an
    order remanding a case to the State court from which it was
    removed pursuant to section 1443 of this title shall be reviewable
by
    appeal or otherwise.

federal courts of jurisdiction to review a district court's remand order when the order is based on a defect in removal procedure or lack of subject matter jurisdiction. See Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 346, 96 S. Ct. 584, 590 (1976); Quackenbush v. Allstate Ins. Co., ___ U.S. ___, ___, 116 S. Ct. 1712, 1718

_____

28 U.S.C. S 1447 (West Supp. 1997).

Those attempting to divine the meaning of S 1447 from its text would do well to recall that sometimes "a page of history is worth a volume of logic." New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S. Ct. 506, 507 (1921) (Holmes, J.). In Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S. Ct. 584 (1976), the Supreme Court examined the century-old history of Congress's bar to review of remand orders and concluded that the bar to review contained in S 1447(d) covered only remands issued because a case was removed improperly or the district court was without subject matter jurisdiction. See id. at 346-50; 96 S. Ct. at 590-93. At the time of Thermtron, the text of S 1447(c) provided the textual hook for this interpretation. It then read:"If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs." Thermtron , 423 U.S. at 342, 96 S. Ct. at 589. Thus, the Court concluded that the bar to review contained in S 1447(d) applied only when the remand was based on the grounds specified in S 1447(c). See id. at 346; 96 S. Ct. at 590.

Congress has since amended S 1447(c) several times, most recently in 1996. The amendments have focused on creating and clarifying time limits concerning when a plaintiff can seek a remand following removal from state court. These amendments have slightly altered the grounds for remand "specified" in the text of S 1447(c): the statute now speaks of remands for lack of subject matter jurisdiction, and remands for "any defect other than lack of subject matter jurisdiction." 28 U.S.C. S 1447(c) (West Supp. 1997). Rather than take this change in language as a wholesale rejection of Thermtron and a dramatic expansion of S 1447(d), we will assume that Congress did not mean to upset the Thermtron limits on S 1447(d), and that they remain in effect unchanged by the intervening textual modifications to S 1447(c). This conclusion is supported by the legislative history of the 1996 amendment. See H.R. REP. NO. 104-799 at 2-3 (1996), reprinted in 1996 U.S.C.C.A.N. 3417, 3418-19 (suggesting that the textual changes were designed only to clarify Congressional intent on the timing of remands made for reasons other than lack of subject matter jurisdiction).

9

(1996). The purpose of the rule is to prevent a party to a state lawsuit from using federal removal provisions and appeals as tool to introduce substantial delay into a state action. See Thermtron, 423 U.S. at 354-55, 96 S. Ct. at 594-95 (Rehnquist, J., dissenting). Without S 1447(d), a party to a state action could remove the action to federal court, await remand, request reconsideration of the remand, appeal, request rehearing, and then file a petition for a writ of certiorari, all before being forced to return to state court several years later. See Greenwood v. Peacock, 384 U.S. 808, 832-33, 86 S. Ct. 1800, 1815 (1966) (contemplating the delay that would result if state criminal defendants could regularly seek removal under 28 U.S.C. S 1443, and then seek review of subsequent remand orders). To avoid this delay, Congress has fashioned an exception to the general rule of review, and made a district court's initial determination that removal was inappropriate, a nonreviewable one.

B.

In the present case, the district court issued a remand pursuant to 28 U.S.C. S 1367(c),[9] rather than 28 U.S.C. S 1447(c). Section 1367(c) grants district courts the discretion to refuse to exercise supplemental jurisdiction when "values of judicial economy, convenience, fairness, and comity" counsel that the district court remand state claims to a state forum. See City of Chicago v. International College of Surgeons, ___ U.S. ___, ___, 118 S. Ct. 523, 534 (1997) (quoting Carnegie Mellon Univ. v. Cohill , 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)). Because the original

_____

9. 28 U.S.C. S 1367(c) (1993) states:

>   (c) The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. S 1367](a) if--
>
>   (1) the claim raises a novel or complex issue of State law,
>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>   (3) the district court has dismissed all claims over which it has original jurisdiction, or
>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

basis of federal jurisdiction in this case was the presence of Freddie Mac as a party, see 12 U.S.C. S 1452(f), the district court exercised its discretion and declined to exercise supplemental jurisdiction over the state claims against LiTenda following the dismissal of the claims against Freddie Mac. See 28 U.S.C. S 1367(c)(3).

The first question posed by this case is whether the bar to review provided by S 1447(d) is even implicated when a district court enters a remand order pursuant toS 1367(c). The decisions of the Supreme Court, this court, and our sister circuits make clear that S 1367(c) remands, such as the one entered by the district court here, do not invoke the bar to review prescribed by S 1447(d). See, e.g., Cohill, 484 U.S. at 355 n.11, 108 S. Ct. at 621 n.11 ("Section[ ] 1447(c) . . . do[es] not apply to cases over which a federal court has pendent jurisdiction. Thus, the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all."); Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n, 90 F.3d 797, 801 (3d Cir. 1996) (holding that S 1447(d) is inapplicable to a remand order made pursuant to S 1367(c)); Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 224 (3d Cir. 1995) (same); PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993) (same). See also Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 130, 116 S. Ct. 494, 498 (1995) (Kennedy, J., concurring) (noting that several other circuits have agreed that remands pursuant to S 1367(c) do not implicate the bar to review provided by S 1447(d)) (citing cases); Trans Penn, 50 F.3d at 224 (same) (citing cases from eight circuits).

Although the sharp distinction between remands authorized by S 1367(c) and remands authorized by S 1447(c) is often misunderstood, the reason behind their different treatment is clear. Review of S 1447(c) remands is barred to keep parties to state actions from making dubious allegations of federal jurisdiction in order to forestall the prompt resolution of state cases. Thus, S 1447(c) remands are warranted only when a federal court has no rightful authority to adjudicate a state case that has been removed from state court. In such cases, the statute provides a quick, permanent, and mandatory remedy to

11

return a state case to state court. See International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 89, 111 S. Ct. 1700, 1710 (1991).

By contrast, S 1367(c) serves no such corrective purpose. Remands authorized by S 1367(c) may be entered only when federal subject matter jurisdiction has been affirmatively established, via 28 U.S.C. S 1367(a), and are entered independently of whether the case originated in state or federal court. See International College of Surgeons, 118 S. Ct. at 530. Thus, a district court's decision to remand pursuant to S 1367(c) does not imply that the case was improperly filed in federal court. Rather, it reflects the court's judgment, reviewable on appeal for abuse of discretion, see Sparks v. Hershey, 661 F.2d 30, 33 (3d Cir. 1981), that at the present stage of litigation it would be best for supplemental jurisdiction to be declined so that state issues may be adjudicated by a state court. See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 1139-40 (1966). In such circumstances, there is no pressing need to block the mechanisms of review that are generally afforded civil litigants.

Thus, the bar to review codified at S 1447(d) is entirely inapplicable when the basis of the remand was the district court's discretion pursuant to S 1367(c).

C.

Freddie Mac contends that we should construe the cases holding that the S 1447 bar to review is inapplicable when a remand is issued under S 1367(c) as establishing that only appellate jurisdiction is available. Conceding our appellate jurisdiction, Freddie Mac argues that the bar to review should nonetheless apply to post-remand motions filed before the district court. In other words, Freddie Mac argues that the district court lacked jurisdiction to adjudicate the post-remand motions, but that we have appellate jurisdiction to review the merits of the district court's orders.

We cannot agree. It is difficult to understand how we can exercise appellate jurisdiction over the merits of a case if the district court in which the notice of appeal wasfiled did

12

not itself have jurisdiction when the notice of appeal was filed. Federal jurisdiction cannot be "lost" by the district court one day and then "found" by the court of appeals later on. Rather, jurisdiction that is originally and properly vested in the district court becomes vested in the court of appeals when a notice of appeal is filed. See Venen v. Sweet, 758 F.2d 117, 120 (3d Cir. 1985) ("As a general rule, the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal.") Thus, if S 1447(d) does not deny an appellate court jurisdiction to review a remand order, it cannot deny the district court jurisdiction to entertain a motion for reconsideration before the notice of appeal is filed. See, e.g., J.O. v. Alton Community Unit Sch. Dist. 11, 909 F.2d 267, 273–274 (7th Cir. 1990) (holding that a district court has the power to reconsider its order following a S 1367(c) remand during the time allowed forfiling a notice of appeal).

D.

We next address whether the mailing of the S 1367(c) remand order to state court divested the district court of jurisdiction. The primary support for this view derives from language in Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 224 (3d Cir. 1995), which could be read (and was read, by the district court) to suggest that the answer to that question is "yes." However, such a reading of the dicta in Trans Penn would ignore the sharp distinction between S 1447(c) remands and those remands authorized by S 1367(c). Accordingly, we conclude that the mailing of a remand order does not divest a district court of jurisdiction to entertain a motion for reconsideration following a remand order issued under S 1367(c).

Trans Penn was a labor action brought by employees in state court against their employer. Following the employer's removal to federal court, the employees withdrew their federal claims and asked the district court to remand the remaining state claims to state court. The district court did so, exercising its discretion according to S 1367(c).

13

Subsequently, the employer filed a motion for reconsideration, which was denied on the merits. The employer then petitioned our court for a writ of mandamus, arguing that the remand was inappropriate because federal issues remained lurking within the remaining state claims.

Before reaching the merits, we addressed at length whether the district court had jurisdiction to reconsider its remand order on the merits. We began by noting correctly that the S 1447(d) bar to review was inapplicable because the remand order was issued pursuant to S 1367(c). See id. at 224. Nonetheless, the court suggested, there was a question as to whether the district court had jurisdiction to reconsider its own remand order. Our own precedent, the court intimated, was "inconclusive." Id. at 226. First, there was a "general rule . . . that a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court." Id. at 225. Second, remands authorized by S 1367(c) were generally reviewable. Finding no evidence that a remand order had been sent to the state court, and noting that the S 1367(c) remand did not implicateS 1447(d), we held that the district court retained jurisdiction to reconsider its order of remand. See id. at 227.

The conclusion we have reached in this case is in accord with the holding of Trans Penn. In both cases, the district court retained jurisdiction to reconsider its remand order. To the extent that dicta in Trans Penn could be read as suggesting a different result would be warranted if the remand order had been sent to state court before the motion for reconsideration was filed, we disavow that notion. Indeed, the law in our circuit is clear. The mailing of a remand order divests the district court of jurisdiction when the remand is authorized by S 1447(c). See Hunt v. Acromed Corp., 961 F.2d 1079, 1082 (3d Cir. 1992). When the remand is authorized by S 1367(c), the bar to review is inapplicable and the district court may reconsider its remand order just as it would any other order. See Trans Penn, 50 F.3d at 227; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994); Alton Community Unit Sch. Dist. 11, 909 F.2d at 273-274.

14

Because the remand in this case was authorized by S 1367(c), the mailing of the remand order to state court did not divest the district court of jurisdiction to entertain Hudson's motion for reconsideration.

IV.

Having determined that the district court retained jurisdiction to adjudicate Hudson's motion for reconsideration, we must next decide whether to proceed to the merits of the case or reverse and remand to the district court. Hudson argues that we should reverse the reconsideration order of the district court, and remand this case to the district court so it may entertain Hudson's motion on the merits. Freddie Mac contends that in the name of judicial economy we should address the merits of the motion for reconsideration in this appeal.

When a district court has failed to reach a question below that becomes critical when reviewed on appeal, an appellate court may sometimes resolve the issue on appeal rather than remand to the district court. See, e.g., Chase Manhattan Bank, N.A. v. American Nat'l Bank and Trust Co., 93 F.3d 1064, 1072 (2d Cir. 1996) (summary judgment). This procedure is generally appropriate when the factual record is developed and the issues provide purely legal questions, upon which an appellate court exercises plenary review. In such a case, an appellate tribunal can act just as a trial court would, so nothing is lost by having the reviewing court address the disputed issue in the first instance. See Otto v. Variable Annuity Life Ins. Co., 814 F.2d 1127, 1138 & n.11 (7th Cir. 1986).

Such a procedure may be inappropriate, however, when the issue to be addressed is not a purely legal question. When the resolution of an issue requires the exercise of discretion or fact finding, for example, it is inappropriate and unwise for an appellate court to step in. As the Supreme Court has stated, "the proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 10, 100 S. Ct. 1460, 1466 (1980).

15

The merits of Hudson's motion for reconsideration and to amend its pleadings fall within the zone of discretion and judgment that is best addressed initially by the district court. A district court's decision to deny a motion for reconsideration is placed within the sound discretion of the district court; factual determinations supporting its decision are reviewed by us under a clearly erroneous standard. See North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1203 (3d Cir. 1995). Similarly, a district court's decision to grant or deny leave to amend pleadings is reviewed for abuse of discretion. See Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing, 663 F.2d 419, 425 (3d Cir. 1981). It is not our place to exercise the discretion normally afforded the district court.

Accordingly, we will not reach the merits of Hudson's motion, and instead will remand to the district court so that the district court can take whatever steps are necessary to entertain Hudson's post-dismissal motions. If Hudson's reconsideration motion is granted, and if it is permitted to amend its complaint, the district court will need to vacate the remand order and give appropriate notification to the state court. If Hudson's motions are denied, however, no such steps will be necessary: it would be a waste of judicial effort (indeed, a needless spinning of wheels) to reclaim the state action from state court, only to have to order a remand again immediately thereafter. Of course, we do not express any opinion as to the merits of Hudson's motions, leaving it to the sound discretion of the district court as to how it regards allegations in Hudson's original and amended complaint, as well as the timeliness of Hudson's "without cause" theory.

The January 13, 1997 order of the district court will be reversed, and remanded to the district court for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16