NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1306 & 16-1331
_____

JEFFREY RUTLEDGE

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION AFL-CIO;
NEW YORK SHIPPING ASSOCIATION, INC.; LOCAL 1233;
MAHER TERMINALS, LLC; BERNARD DUDLEY; GERARD CROTTY;
JOHN DOES 1-10; ABC CORPS 1-10


New York Shipping Association, Inc.;
Maher Terminals, LLC; Gerard Crotty,
                    Appellants in No. 16-1306

International Longshoremen's Association AFL-CIO;
Local 1233, ILA AFL-CIO; Bernard Dudley,
                    Appellants in No. 16-1331


_____

Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-14-cv-05589)
District Judge: Honorable Claire C. Cecchi
_____

Submitted Under Third Circuit LAR 34.1(a)
May 8, 2017

Before: AMBRO, RESTREPO, and NYGAARD, Circuit Judges

(Opinion filed: July 7, 2017)

————————

OPINION[*]

————————

AMBRO, <u>Circuit Judge</u>

Appellants in this consolidated matter—the International Longshoremen's Association AFL-CIO, Local 1233, the New York Shipping Association, Inc., Maher Terminals, LLC, Bernard Dudley, and Gerard Crotty (collectively, "Appellants")—challenge the District Court's decision to remand to the New Jersey state courts three of five claims brought against them by Jeffrey Rutledge. Appellants denied Rutledge the opportunity to resume employment as a union longshoreman after his completion of addiction treatment and diversion programs following an arrest for possession of a controlled substance, so Rutledge brought five state-law claims against them in New Jersey state court. Contending that the claims were, in substance if not form, federal-law claims under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), Appellants asked the District Court to dismiss them all as barred by the LMRA's six-month statute of limitations, *see Albright v. Virtue*, 273 F.3d 564, 566 (3d Cir. 2001).

The District Court agreed that two claims were in fact governed by the LMRA and dismissed them as untimely. *See Allis-Chalmers Corp.*, 471 U.S. at 220 ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law."). It held, however, that the three others were state-law claims and, with no federal claims remaining, remanded them to the New Jersey courts.

## I.    BACKGROUND

Rutledge became a longshoreman in the Port of New York and New Jersey in 2003. In New York and New Jersey the privilege of working as a longshoreman is jealously guarded, so to begin his employment Rutledge had to satisfy several interlocking requirements: he had to join the appropriate union, Local 1233 of the International Longshoreman's Association ("ILA"), which required the sponsorship of his employer, Maher Terminals, LLC; he then had to register with and obtain approval from the New York Waterfront Commission, a bi-state agency of New York and New Jersey; and the Waterfront Commission, in turn, required Rutledge's registration to be sponsored by his union as well as the New York Shipping Association ("NYSA"), Inc. Having satisfied these requirements, Rutledge began his work at the Port.

In October 2006, Rutledge was arrested and charged with possession of a small amount of cocaine, but he was never convicted of that crime. Instead, the charge was initially downgraded to "failure to deliver a controlled dangerous substance to the police[,]" a disorderly persons offense. J.A. 26. The downgraded charge was eventually dismissed entirely when Rutledge successfully completed a conditional discharge program.

Unfortunately for Rutledge, however, the collateral consequences of his arrest would be worse than the criminal sanctions. Following his arrest, Maher and Local 1233 terminated their sponsorships of Rutledge. The Waterfront Commission responded by revoking Rutledge's registration in March 2008, effectively terminating his ability to work as a longshoreman.

Rutledge went on to complete a drug and alcohol rehabilitation program, but about the same time he was diagnosed with and treated for cancer. The treatment left him with significant hearing loss, requiring use of a cochlear implant.

Following his recovery, Rutledge sought reinstatement in March 2010 of his registration with the Waterfront Commission. The procedures governing reinstatement are contained in a Collective Bargaining Agreement (the "CBA") to which NYSA, ILA, Maher, and Local 1233 are parties. Per those procedures, the joint NYSE-ILA Seniority Board, an arbitral panel, considered and denied his request in May 2010, citing "the current depressed economic environment and [Rutledge's] arrest for possession of a controlled dangerous substance[.]" J.A. 27. He appealed to the NYSA-ILA Contract Board, which denied his appeal in December 2010, relying exclusively on Rutledge's arrest. In April 2013, Rutledge submitted a second request for reinstatement to the Seniority Board, which it denied in July 2013, citing the Contract Board's 2010 decision.

In August 2014 Rutledge filed a complaint in New Jersey state court, which Appellants removed to the District Court. As noted in summary fashion above, that Court held that two of Rutledge's claims—breach of collective bargaining agreement and breach of the duty of fair representation—were not state-law claims at all, but constituted

4

a single "hybrid suit" under LMRA § 301. A section 301 hybrid suit exists when a plaintiff simultaneously sues his employer for wrongful discharge and his union for breach of its duty of fair representation by failing to pursue a grievance based on the wrongful discharge. *See United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981). These suits are governed by a six-month statute of limitations, 29 U.S.C. § 160(b), that Rutledge had not met, so the Court dismissed his first two claims. *See Albright*, 273 F.3d at 572–73.

The Court concluded that Rutledge's three remaining claims—violation of the New Jersey Law Against Discrimination ("NJ LAD"), N.J. Stat. § 10:5-1, *et seq.*; common law fraud, deceit, and misrepresentation; and tortious interference with a prospective economic advantage—were not preempted by the LMRA and remanded them to state court over Appellants' objection. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348 (1988) ("[A] district court has discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendent state-law claims remain."). Appellants ask that we reverse the District Court's remand of the remaining claims, hold that they too are governed by § 301, and dismiss them as untimely.

## II.    JURISDICTION

Before we may consider Appellants' requests, we must assure ourselves that we have jurisdiction to do so. *See Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996). Appellants dedicate a significant portion of their brief to overcoming 28 U.S.C. § 1447's bar on appellate review. That is unsurprising, as the District Court

cited § 1447 as the basis for its remand decision, J.A. 12, and that section provides in part that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[,]" *see* 28 U.S.C. § 1447(d).

"This bar to review, however, has been held to apply *only* to remand orders issued pursuant to 28 U.S.C. § 1447(c), that is, where the case was remanded due to a defect in the removal procedures or for lack of subject matter jurisdiction." *Pa. Nurses Ass'n*, 90 F.3d at 801 (emphasis added). But the District Court did not remand the state-law claims for either of these reasons. Despite its citation of § 1447, it in fact exercised authority granted by 28 U.S.C. § 1367, which provides supplemental jurisdiction over state-law claims as well as the discretion to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c). When § 1367(c) supplies the basis for remand, § 1447 does not block appellate review. *Pa. Nurses Ass'n*, 90 F.3d at 801.

But that is not the end of the inquiry. Even if § 1447 is no bar, we must determine whether the requirements of 28 U.S.C. § 1291 have been satisfied. "[In] accordance with § 1291, [w]e have jurisdiction to review only those orders of the district courts that are considered final." *Papotto v. Hartford Life & Accident Ins. Co.*, 731 F.3d 265, 269 (3d Cir. 2013) (internal quotation marks omitted). In cases following *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 715 (1996), we have held that because "[a] district court's remand order divest[s] the federal court of all control over the action," we have jurisdiction to review it. *Pa. Nurses Ass'n*, 90 F.3d at 801; *see also In re FMC Corp. Packaging Sys. Div.*, 208 F.3d 445, 449 (3d Cir. 2000) (while remand orders do not meet the traditional

6

definition of finality, they should be deemed final for jurisdictional purposes in accord with the Supreme Court's decision in *Quackenbush*, 517 U.S. at 712). Thus we proceed to the merits of this appeal.

## III. ANALYSIS

LMRA § 301 provides federal courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." That section "not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements but also authorizes the courts to fashion 'a body of federal law for the enforcement of these collective bargaining agreements.'" *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990) (quoting *Textile Workers v. Lincoln Mills of Ala.,* 353 U.S. 448, 451 (1957)). Thus § 301 preempts state-law "claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks omitted). Put differently,

> if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles— necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988).

"At the same time, the mere existence of a collective bargaining agreement does not prevent an individual from bringing state law claims based on some independent

7

agreement or obligation." *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 229 (3d Cir. 1995). "[A] state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." *Lingle*, 486 U.S. at 413 n.12. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp.*, 471 U.S. at 211.

Nonetheless Appellants contend that Rutledge's three state-law claims are "'completely preempted' [by § 301 and thus] requir[e] the district court to retain jurisdiction over the case because of the implicit federal questions that [they] believe[] are raised on the face of the complaint." *Trans Penn Wax Corp.*, 50 F.3d at 228.[1]

## A. New Jersey Law Against Discrimination

Rutledge claims that Appellants violated the NJ LAD by denying him reinstatement as a longshoreman because their denial was motivated by his history with cancer and use of a cochlear implant. Appellants contend that Rutledge's discrimination claim is preempted by § 301.

---

[1] "Ordinarily, a case is not removable to federal court simply because, as here, the defendant raises federal preemption as a defense." *Trans Penn Wax Corp.*, 50 F.3d at 228. But claims properly governed by § 301 of the LMRA are an exception to this rule and are removable notwithstanding a plaintiff's decision to frame his claims as governed by state law. *Id.*

8

The Supreme Court recognized in *Lingle* that the LMRA does not preempt state-law claims of retaliatory discharge following an employee's filing of a worker's compensation claim. 486 U.S. at 406. It noted that the elements of retaliatory discharge rest on "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer" that "do[] not turn on the meaning of any provision of a collective-bargaining agreement." *Id.* at 407. "Thus," it held, "the state-law remedy . . . is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." *Id.*

The Court went on to note that there is no reason to distinguish between state workers' compensation laws and state anti-discrimination laws. *Id.* at 413. Furthermore,

> [t]he operation of the antidiscrimination laws . . . illustrate[s] the relevant point for § 301 pre-emption analysis[:] that the mere fact that a broad contractual protection against discriminatory—or retaliatory[—]discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract.

*Id.* at 412–13. Put differently, just because a CBA also prohibits discrimination does not mean that state anti-discrimination laws are preempted by § 301.

Appellants note that Rutledge's complaint makes numerous references to duties and obligations created by the CBA. Thus they contend that his NJ LAD claim concerns the CBA itself. But Appellants cast too wide a net.

First of all, it is unsurprising that Rutledge's complaint would discuss the CBA at length: the District Court held that two of his claims were in fact governed by the CBA

and thus preempted by the LMRA. But the question we must answer is whether his NJ LAD claim "requires" construing the CBA. *Lingle*, 486 U.S. at 407. It does not.

To state a claim under the NJ LAD, Rutledge must show that: (1) he has a disability; (2) he was qualified for the work for which he applied; (3) he was not hired; and (4) the employer continued to seek others with the same qualifications or hired someone with the same or lesser qualifications who was not disabled. *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010). These are factual questions that do not turn on an interpretation of the CBA.[2]

Appellants' likely response to Rutledge's claim that his application was denied because of his disability is what the Seniority and Contract Boards already noted: his application was denied because of his arrest. But whether this is the true reason or mere pretext does not depend on an interpretation of the CBA.

Finally, Appellants contend that the NJ LAD claim requires interpretation of the CBA because, according to them, the remedy Rutledge requests is reinstatement as a longshoreman, and that can only be done under the procedures required by the CBA. But just a glance at Rutledge's complaint reveals that the relief he requests is different. He asks for "back pay, front pay, actual and general damages, compensatory, incidental, consequential, and punitive or treble damages[,] . . . granting . . . attorney's fees, interests, and costs of suit[,] and/or . . . such further relief as the Court may deem equitable and just." J.A. 29. Notably absent from the list is reinstatement.

---

[2] It is possible that construction of a CBA term may prove necessary in some contexts to determine a plaintiff's qualification for a particular position, but Appellants have not identified such a provision of the CBA that would be controlling here.

But even if a remedy Rutledge seeks might depend, in part, on the CBA, his claim is not necessarily preempted. *Lingle*, 486 U.S. at 413 n.12 ("A [CBA] may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand." (internal citation omitted)).

Accordingly, we hold that Rutledge's NJ LAD claim is not preempted, and the District Court did not abuse its discretion by remanding it to the New Jersey state courts.[3]

## B. Fraud

The next contested claim is one for fraud, deceit, and misrepresentation brought under New Jersey common law. Rutledge claims that Appellants defrauded him by falsely stating that he was denied union sponsorship "because of economic conditions and his having been charged with a controlled dangerous substance offense." J.A. 30. To state a claim of fraud under New Jersey law a plaintiff must allege (1) that the defendant made a material misrepresentation of a currently existing or past fact, (2) which he knew or believed to be false, (3) upon which he intended the plaintiff to rely, (4) and on which the plaintiff reasonably did rely, (5) with resulting damages. *In re Resorts Int'l, Inc.*, 181

---

[3] Appellants argue in the alternative that, even if Rutledge's NJ LAD claim is not preempted, it is barred by the law's two-year statute of limitations because Rutledge was aware of a possible discrimination claim in 2010. *See Montells v. Haynes*, 627 A.2d 654, 658-60 (N.J. 1993). Noting that when Rutledge became aware of his claim is a factual question that would benefit from a more developed record, the District Court declined to answer it, leaving the issue to the state trial court that will hear the claim. We do the same.

F.3d 505, 509 (3d Cir. 1999) (citing *Jewish Ctr. v. Whale,* 432 A.2d 521, 524 (N.J. 1981)). Not one of these elements necessarily requires interpretation of the CBA. *See Trans Penn Wax Corp.*, 50 F.3d at 232.

We have ruled that a fraud claim *may* require interpretation of a CBA. *See, e.g., Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 232–33 (3d Cir. 1999). But in *Beidleman* the misrepresentation alleged was one party's refusal to acknowledge the validity of a labor agreement. *Id.* We noted that "for a court to decide the merits of th[at] claim it must interpret those terms in the agreement setting forth the appellees' obligations, for if the [relevant] agreement does not contain terms that bind the appellees, then no 'misrepresentation' exists." *Id.*

Appellants contend that Rutledge's fraudulent representation claim depends on the CBA because the only purported misrepresentations Rutledge identifies are the grounds given by the Seniority and Contract Boards for denying his application for reinstatement. They argue the "falsity [of these reasons] depends on whether the collective bargaining agreement recognizes the[se] ground[s] as a valid reason for denying reinstatement." Appellants' Br. at 24.

Appellants' logic is faulty. Whether the grounds cited by the Seniority and Contract Boards for denial are their true reasons for denying his application or merely pretense has nothing to do with what the CBA says. The grounds themselves, Rutledge's arrest and criminal charge as well as the state of the economy, may be permissible grounds for denial and yet not be the real reasons his application was denied.

12

Alternatively, these may not be permissible grounds for denial under the CBA and yet in fact be the reasons behind the Seniority and Contract Boards' denial of his application.

Appellants also contend that, instead of a fraud claim, Rutledge "should have brought an action challenging [the] arbitral decisions based upon a recognized ground for overturning an arbitration award [under LMRA § 301,] such as bias, fraud, or dishonesty[.]" Appellants' Br. at 24. But the law is clear that "a plaintiff may bring a state law tort action against an employer, even where he could have brought a similar claim based on a provision in his collective bargaining agreement, so long as the state claim does not require interpretation of the collective bargaining agreement." *Trans Penn Wax Corp.*, 50 F.3d at 229. That Rutledge could have brought a different claim does not undermine the state-law character of the claim before us.

## C. Tortious Interference

Finally, Rutledge alleges that the Appellants tortiously interfered with a prospective economic advantage that he expected to receive by denying his reinstatement as a longshoreman. To succeed on a claim of tortious interference with a prospective economic advantage, a plaintiff must identify, among other things, "some protectable right—a prospective economic or contractual relationship[;] [a]lthough the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some reasonable expectation of economic advantage." *MacDougall v. Weichert*, 677 A.2d 162, 174 (N.J. 1996) (internal quotation marks omitted). Appellants argue that the only protectable rights that could be implicated by Rutledge's claim (*e.g.*, industry reinstatement eligibility, seniority, pay level, or employment position) are those provided

by the CBA. Thus, they contend, determining whether Rutledge has a reasonable expectation of economic advantage (and whether Appellants interfered with it) necessarily requires interpretation of the CBA.

We agree. Unlike his two other remaining state-law claims, resolution of Rutledge's final tort claim requires interpretation of the CBA because it is impossible to determine whether Rutledge had a reasonable expectation of future employment as a longshoreman without looking to the CBA provisions that govern the process for reinstating his eligibility for that work. *Cf. Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 333 (3d Cir. 1993) (resolution of tortious-interference-with-contract claim necessarily required interpretation of collective bargaining agreement). This claim is thus preempted by § 301.

The District Court held that all of Rutledge's claims governed by § 301 were filed after that section's statute of limitations had run, and Rutledge does not challenge that holding on appeal. Accordingly, his tortious-interference claim must be dismissed. *See Albright*, 273 F.3d at 566.

\*     \*     \*     \*     \*

For these reasons we affirm the District Court's remand of the Rutledge's state-law claims under the New Jersey Law Against Discrimination and New Jersey common law of fraud, deceit, and misrepresentation. However, we reverse the decision with respect to his claim of tortious interference with a prospective economic advantage, which is preempted by LMRA § 301 and must be dismissed as untimely.

14